I. C. STAMBAUGH, Administrator of the Estate of Harold Stambaugh, Deceased, Appellant,

v.

Ervin MOFFETT and Evelyn Moffett, Appellees.

Court of Appeals of Kentucky.

March 18, 1955.

Rehearing Denied May 13, 1955.

L. Cordell Lawrence, Jamestown, Lorimer W. Scott, Newport, for appellant.

Leonard E. Wilson, Jamestown, for appellees.

HOGG, Justice.

The administrator of the estate of Harold Stambaugh brought suit in the Russell Circuit Court seeking to recover $3,000 alleged to have been loaned by intestate to appellees. This appeal is from a judgment dismissing the petition.

Intestate died on April 27, 1952. Soon thereafter the administrator was appointed. Among the effects of intestate was found a cancelled check payable to the order of Evelyn and Ervin Moffett (appellees) for $3,000, dated "9–18–1951," and drawn on the West Side Bank of Newport, Kentucky, with a memorandum on the face of the check reading for "New Fishing Cabins," which check bears endorsements of Evelyn Moffett and Ervin Moffett and various bank endorsements. The check cleared through the bank on which it was drawn, according to the punctured perforated statement on September 17, 1951. It is certain that appellees collected the money on the check.

Soon after discovering the cancelled check, which was soon after his appointment as administrator, appellant, who lived in Campbell County, went to Jamestown, in Russell County, and talked with the Moffetts about the check. Thereafter, Mr. Scott, attorney for the administrator, made a trip to Jamestown to talk with appellees about paying the $3,000 which the estate claimed appellees owed. The testimony of Mr. Scott concerning his conversation with the appellees, which was unobjected to and which we believe is competent, is as follows:

"* * * After Mr. I. C. Stambaugh had made a trip to Jamestown, Kentucky, and after he had talked with Mr. and Mrs. Moffett, he asked me to try to arrange for the payment of the amount received by the check by Mr. and Mrs. Moffett, and accordingly I made a trip to Jamestown, Kentucky, on August 14, 1952, and at that time saw and talked with Mrs. Evelyn Moffett, and I asked her if some arrangements could be made to pay the three thousand ($3,000.00) dollars to Mr. Stambaugh's estate, and she told me that she did not owe the money, and I then asked her if she had paid it, and she said 'No,' that it had not been paid, but that neither she nor her husband felt that they owed the obligation. She told me that she did, with her husband, receive the check for three thousand ($3,000.00) dollars from Mr. Stambaugh. I informed her that I would return, or communicate with her again, which I did; on August 16, 1952, I wrote her a letter, or wrote both Mr. and Mrs. Moffett a letter and advised them that I would be instructed to proceed to bring an action to enforce the collection of the obligation, which was subsequently done, and that is the action in which I am now testifying."

Appellees did not object to the above-quoted testimony and it will be regarded by us as competent.

Appellant attempted to show by his own testimony, and the testimony of other persons, that the money was loaned to the appellees. The substance of their testimony is as follows: Appellant testified he talked with Moffett concerning the check and Moffett told him they were in need of money and went to Covington, Kentucky, where intestate resided, and got the $3,000 from him. Ralph Simpson, president of a building and loan concern in Newport, testified that on September 4, 1951, intestate withdrew $2,000 from his account with the association and told him that he was going to help Moffett out to the extent of $3,000 and that he would be properly secured and the transaction legally handled. The executive vice-president of the West Side Savings Bank in Newport, on which bank the check was drawn, stated that the intestate told him he had loaned the Moffetts $3,000. A fishing and hunting partner of intestate testified that the deceased told him that he was investing some money

with the Moffetts and that he was going about it in a legal manner. Two other witnesses testified along this same line.

Appellees objected to all this testimony, and the objections were sustained. On final hearing the court held that the evidence was insufficient to show that the money was loaned to the appellees.

██ The first question which concerns us on this appeal is whether statements made by the deceased concerning the nature of the transaction are admissible in evidence. In some instances statements made by a deceased person may be competent, but never where the declaration is self-serving. For such statements to be competent, the declaration must be against the interest of the declarant. Evans v. Payne, Ky., 258 S.W.2d 919; Webber v. Western & Southern Life Insurance Co., 310 Ky. 280, 220 S.W.2d 584; Head v. Head, 293 Ky. 371, 169 S.W.2d 25. The statements made by the deceased to the witnesses in this case were clearly self-serving, as they tended to show that the money was paid to the appellees as a loan and were rendered incompetent by the hearsay rule.

The evidence in this case shows that the deceased had no interest whatever in the fishing camp or fishing cabins. It appears that the deceased became acquainted with the appellees through his fishing activities and a friendship developed between them and it is admitted that the appellees received $3,000 from the deceased.

██ Bearing in mind the relationship that existed between the deceased and the appellees, we think the uncontradicted testimony of attorney Scott and the check itself made out a *prima facie* case of a loan from deceased to appellees. Ordinarily, in the absence of an explanation, the presumption arising from the delivery of a check is that it was delivered in payment of a debt, or as a loan, and not as a gift. See 24 Am.Jur., page 790. The facts and circumstances shown in this case cast the burden upon appellees to show that the transaction was not that which the evidence on the part of appellant tended to

establish, viz.: a loan from the decedent to appellees. In the present case, the cause of action, if any, arose out of the giving of the check and whether it created a cause of action depended upon the real nature of the transaction—whether the check represented a loan, gift, or something else. The fair import of the statements made by appellees to Mr. Scott is that the transaction was a loan. The admissions made by the Moffetts to Mr. Scott, and the check; placed the responsibility on the appellees to call out the whole of the communication or transaction bearing on or tending to explain or qualify the statements made by appellees to Mr. Scott.

██ There is difficulty always in administering section 606(2) of the Civil Code of Practice, now KRS 421.210(2), commonly known as the Dead Man's Statute. The survivor of one of two parties is not precluded by that section from testifying to any independent fact material to the lawsuit,—that is, to any fact which does not involve the disclosure of a personal transaction or communication with the deceased, or is not concerning such personal transaction or communication. The survivor is not precluded from testifying in his own behalf to a material fact simply because it may throw light upon or tend to prove or disprove the transaction in issue. The statute closes the lips of the survivor as to personal dealings and transactions between the parties. The statute does not deprive him of the right to testify to any material fact known to him not involving the disclosure of a personal transaction with the deceased. It seems to us that under the circumstances and the proof shown in this case, the appellees were obliged to take up the burden and get from under the load by making a sufficient explanation in the premises.

██ Appellees did not specifically plead that the check represented a gift. Their answer to the petition was a mere traverse, but throughout the trial appellees left the inference that the $3,000 check represented a gift to them. It is the rule in this state that the donee of a gift *inter vivos* assert-

ing the gift for the first time after the death of the donor, especially where a confidential relationship existed between them, has the burden of establishing the gift by clear and convincing evidence. Riordan v. Riordan, Ky., 252 S.W.2d 901; Brashears' Adm'r v. Oder, 291 Ky. 817, 165 S.W.2d 801.

Appellees argue that decedent's cancelled check is not sufficient to make a case against them and cite the case of Stiff's Ex'r v. Stiff, 217 Ky. 716, 290 S.W. 718, 719, as authority. We do not regard that case as decisive of this case. In the Stiff case, the only competent evidence to support the cause of action were the checks themselves, which, from the endorsements, appeared to have been collected. Deciding that the testimony as to what the testatrix said the checks were for was incompetent, we held that the case failed for lack of proof. We pointed out there was no competent evidence in the record which tended in the least to establish that the checks represented loans from decedent to the surviving party. Testatrix was the mother of the surviving party. Quoting from 29 Cyc., page 1661, it was said:

> " 'The legal inference arising from advances of money by a parent to a child, when unexplained, is that they were by way of gifts, and not by way of loan.' "

In the case before us, there is some competent evidence tending to establish that the check represented a loan from decedent to appellees. We said in Nolty's Adm'r v. Fultz, 261 Ky. 516, 88 S.W.2d 35, 36:

> "Since she had admitted in her answer the receipt of this money from the old man, (decedent) the burden was on Mrs. Fultz to account for the retention of it; therefore, she had to come forward with evidence to justify such retention to avoid a judgment against her. * * *." (Our parenthesis.)

Under the facts and circumstances of this case, the burden was upon the appellees to explain the circumstances by which they received the money. In this they utterly failed.

The judgment is reversed for proceedings consistent with this opinion.